## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## AT MEMPHIS

| | | |
|---|---|---|
| **COLTON CATHEY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | No. _____ |
| | ) | **JURY DEMAND** |
| **CITY OF MEMPHIS,** | ) | |
| **CHIEF CERELYN DAVIS, in her individual** | ) | |
| **And Official capacity, Lieutenant John** | ) | |
| **Morris, Sergeant Lacy L. HARDAWAY,** | ) | |
| **In his individual capacity, Sergeant Gary L.** | ) | |
| **Williams, ) in his individual capacity, Sergeant** | ) | |
| **Richard K. Hillyard, in his individual capacity,** | ) | |
| **Tasheka C. Bryant, in his individual capacity,** | ) | |
| **L Gibson in his individual capacity, and** | ) | |
| **Christopher Wilson in his individual capacity** | ) | |
| **John Does 1-5, individually and in their official** | ) | |
| **Capacities as City of Memphis Police officers** | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Comes now Plaintiff, by and through counsel, and brings this cause of action against the Defendants, both jointly and severally, for all injuries and damages sustained by the Plaintiff and would respectfully state as follows:

### JURISDICTION AND VENUE

1. The Court's jurisdiction over this action is conferred by 28 U.S.C. § 1331, 28 U.S.C. § 1337, 28 U.S.C. § 1343, and 42 U.S.C. § 1983, § 1985, § 1986, the Fourth Amendment and Fourteenth Amendment of the United States Constitution, as well as 28 U.S.C. § 1367(a), which confers supplemental jurisdiction on this Court to entertain Plaintiff's state law claims such as false arrest and malicious prosecution.

2. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.

3. Each and all of the acts of the Defendants involved in this incident were performed under the color and pretense of the constitutions, statues, ordinances, regulations, policies, customs and usages of the United States of America, the State of Tennessee, and the City of Memphis, under the color of law and by virtue of their authority as officials of the City of Memphis.

**PARTIES**

4. Plaintiff is an adult citizen of Shelby County, Tennessee.

5. Defendant, City of Memphis, Tennessee, is a governmental entity which, among other things, runs a police department and operates under and by virtue of the authority of the laws of the State of Tennessee. Defendant City of Memphis is under a duty to run its policing activities in a lawful manner and to preserve to citizens their clearly established rights, privileges and immunities secured to them by the Constitutions of the United States and the State of Tennessee. The City of Memphis's agent for service of process is the City Attorney's Office.

6. Under Article XI, Section 9 of the Constitution of the State of Tennessee, the state law of Tennessee authorizes a city's creation of a charter.

7. The City of Memphis Charter is entitled, "Charter and Related Laws of the City of Memphis."

8. The City of Memphis fulfills its policing functions through the Memphis Police Department, which is and was at all relevant times a law enforcement agency.

9. The Memphis Police Department is led by the Director of Police Services, also known as the "Chief of Police," who is bestowed with the following authority under the City of Memphis Charter's Section on Police Services:

a. The director of police services shall have general care of the peace of the city, and shall see that all subordinates do their duty in preserving the same. Title 2, Chapter 2-30,

Sec. 28-3.

b.  He or she shall have control over the entire police force and see to the execution of every ordinance. Title 2, Chapter 2-30, Sec. 28-3.

c.  He or she shall have general supervision over the subject of nuisances, and the abatement of same, and shall exercise and discharge all such powers and functions as pertain to his or her office and perform such other duties as may be required of him or her by this Code or other ordinance. Title 2, Chapter 2-30, Sec. 28-3.

d.  The director of police services is authorized and empowered to appoint one deputy director, four deputy chiefs, and as many chief inspectors, inspectors, captains, lieutenants, sergeants, detectives and patrol officers, together with such emergency police, secretaries, clerks, stenographers, operators, janitors, turnkeys, desk lieutenants, desk sergeants, mechanics, matrons, women police officers and such other help as may be needed to efficiently police the city and to efficiently conduct the police division of the city. Title 2, Chapter 2, Sec. 28-4.

e.  The director of police may, from time to time, promulgate and shall enforce such rules and regulations for the conduct of the police division, not inconsistent with the Charter and ordinances of the city, as may be necessary for the efficient conduct of the division and policing of the city. Title 2, Chapter 2-30, Sec. 2-28-7.

10. The Director of Police Services, also known as the Chief of Police of the Memphis Police Department, is and was at all relevant times the final policymaker as it relates to the implementation of police policies and practices.

11. The Director of Police Services, also known as the Chief of Police of the Memphis Police Department, is and was at all relevant times the final policymaker as it relates to the implementation of police hiring and assignment to specialized units within the Memphis Police Department.

12. The Director of Police Services, also known as the Chief of Police of the Memphis Police Department, is and was at all relevant times the final policymaker as it relates to the implementation and oversight of police training.

13. The Director of Police Services, also known as the Chief of Police of the Memphis Police Department, is and was at all relevant times the final policymaker as it relates to the

implementation and oversight of police supervision.

14. Defendant, Cerelyn Davis, the Police Chief, is the highest-ranking law enforcement officer of the City of Memphis and is responsible for ensuring that law enforcement officers of the City of Memphis act in accordance with the constitution and the policies practices and customs of the City of Memphis Police Department.  Defendant Davis is sued individually.

15. At all relevant times, Memphis Police Lieutenant John Morris (hereinafter "Morris" or "Defendant Morris") was employed by the City of Memphis through the Memphis Police Department as a duly appointed and sworn police officer, was acting in his individual capacity, was acting under color of state law, and was acting within the scope of his employment with the City of Memphis.

At all relevant times, Memphis Police Sergeant Lacy Hardaway (hereinafter "Hardaway" or "Defendant Hardaway") was employed by the City of Memphis through the Memphis Police Department as a duly appointed and sworn police officer, was acting in his individual capacity, was acting under color of state law, and was acting within the scope of his employment with the City of Memphis.

16. At all relevant times, Memphis Police Sergeant Gary L. Williams (hereinafter "Williams" or "Defendant Williams") was employed by the City of Memphis through the Memphis Police Department as a duly appointed and sworn police officer, was acting in his individual capacity, was acting under color of state law, and was acting within the scope of his employment with the City of Memphis.

17. At all relevant times, Memphis Police Sergeant Richard Hillyard (hereinafter "Hillyard" or "Defendant Hillyard") was employed by the City of Memphis through the Memphis Police Department as a duly appointed and sworn police officer, was acting in his individual

capacity, was acting under color of state law, and was acting within the scope of his employment with the City of Memphis.

18. At all relevant times, Memphis Police Sergeant Tasheka Bryant (hereinafter "Bryant" or "Defendant Bryant") was employed by the City of Memphis through the Memphis Police Department as a duly appointed and sworn police officer, was acting in his individual capacity, was acting under color of state law, and was acting within the scope of his employment with the City of Memphis.

19. At all relevant times, Memphis Police Sergeant L. Gibson (hereinafter "Gibson" or "Defendant Gibson") was employed by the City of Memphis through the Memphis Police Department as a duly appointed and sworn police officer, was acting in his individual capacity, was acting under color of state law, and was acting within the scope of his employment with the City of Memphis.

20. At all relevant times, Memphis Police Officer Christopher Wilson (hereinafter "Wilson" or "Defendant Williams") was employed by the City of Memphis through the Memphis Police Department as a duly appointed and sworn police officer, was acting in his individual capacity, was acting under color of state law, and was acting within the scope of his employment with the City of Memphis.

21. Upon information and belief and at all times relevant hereto, Defendants John Does 1-5 were employees and officers of the City of Memphis.    The identity of John Does 1-5 are presently unknown.  Defendants John Does 1-5 are being sued in both their official capacity as officers of the Memphis Police Department and in their individual capacity for actions or inactions taken by them individually.

**FACTS**

22. Plaintiff adopts and incorporate by reference herein each and every action of this Complaint as if fully set forth herein verbatim.

23. Plaintiff is a Black/African American male business owner. He is the owner of a towing and booting company known in the community as "A1's Towing & Hauling a/k/a A1's Xclusive Auto AXA, LLC" located in Shelby County, Tennessee. Plaintiff's business tows or boots illegal parkers for private owners on private property. Private parking is available to the public at large as long as the person parking pays for parking. There are numerous signs explaining that you must pay for parking and that tell the violators the consequences of not paying. Plaintiff's company is duly licensed to boot, tow and provide security on private property.

24. Throughout his operation of "A1's Towing & Hauling a/k/a A1's Xclusive Auto AXA, LLC," Plaintiff has been subjected to unlawful harassment and intimidation at the hands of the City of Memphis, Defendant Morris, Defendant Davis, Defendant Hardaway, Defendant Lewis, Defendant Williams, Defendant Bryant, Defendant Gibson, and Defendant Wilson.

25. Defendant Morris, Defendant Hardaway, Defendant Lewis, Defendant Williams, Defendant Bryant, Defendant Gibson, and Defendant Wilson in particular, as well as Defendant John Does 1-5 whose identities are unknown at this time, have targeted Plaintiff and his business for closure because Plaintiff legally boots and tows illegal parkers on private property and because the Plaintiff is a minority (Black) business owner.

26. As a result of the harassment and intimidation by officials and employees of the City of Memphis, the Plaintiff has complained to elected officials of the City of Memphis, the City Attorney's Office and the Shelby County District Attorney's office and requested that the

harassment and intimidation stop. Plaintiff also filed an injunction and declaratory action in the Shelby County Chancery Court. Despite these complaints, pleas, and formal lawsuit, the harassment and intimidation has continued and even intensified.

27. Defendants have performed the actions alleged herein described with personal animosity, malice, and ill-will towards the Plaintiff because of his race which is unrelated to any legitimate governmental objective in a concerted effort to preclude the Plaintiff from running a lawful business in the City of Memphis. As such, Defendants have violated Plaintiff's right to equal protection by singling him out for harsher treatment than similarly situated White towing and booting companies and their owners because of their animosity toward him and because he is a minority owned company. *See*, *Esmail v. Macrane*, 53 F.3d 176 (7th Cir. 1995) and cases cited therein.

28. These Defendants did unlawfully detain Plaintiff's employees and violated Plaintiff's constitutional rights under the Tennessee Constitution, City Ordinances and Tennessee State Statutes, and tried to interfere with Plaintiff's lawful constitutional right to enter into contracts. The Defendants inappropriately applied T.C.A. § 39-14-408 (vandalism), T.C.A. § 39-14-405 (trespassing), City of Memphis Municipal Code, Sec. 11-70-1, 11-70-12, 11-70-13 and 11-70-14, allowing drivers to illegally park on private property without paying, then allowing the illegal parkers the right to destroy the Plaintiff's property and forcing the Plaintiff's company to release the boot even though the illegal parkers did not pay and refused to pay notwithstanding numerous signs that explain the process. Lastly, Defendants placed employees of the Plaintiff in police cars, threatened violence against Plaintiff's employees, towed Plaintiff's vehicles, arrested Plaintiff and Plaintiff's employees, and

allowed offenders to trespass and vandalize equipment owned by the Plaintiff in an attempt

to shut down Plaintiff's business simply because he is a minority business owner.

29. As a result of Defendants' callous and discriminatory conduct towards the Plaintiff, Plaintiff

had to join forces with his contractor to file a suit against the City of Memphis and the

Memphis Police Department.  Plaintiff's contention was that Defendants were weaponizing a

civil municipal ordinance to discriminate against his minority owned company.  Below is the

Civil Ordinance:

Sec. 11-70-1. - Definitions.

As used in this chapter, the following words and phrases shall have the meaning ascribed
to them in this section, except as otherwise may be provided or unless a different meaning
is plainly required by the context:
*Attended commercial parking lot* means a lot or garage used for the temporary storage of
passenger cars or trucks for a fee, and that is staffed by an attendant at all times vehicles
are parked. Attended commercial parking lots do not include residential parking areas.
*Booting* means the attachment of any device to a vehicle that prevents the vehicle from
being driven.
*Booting and ticketing license* means a license issued by the transportation licensing
commission authorizing the holder thereof to engage in the business of booting and/or
enforcement of commercial parking lot time limits by ticketing within the area of the
metropolitan government.
*Booting service* means a person, business, or firm engaged in the practice of booting for a
fee or other compensation within the area of the metropolitan government, provided that
the vehicle's owner/lien holder, a metropolitan police officer in the performance of his/her
official duty, or a parking patrol officer for a college or university engaging in the practice
of booting shall not be considered a booting service.
*Business parking lot* means a parking lot or garage for use by patrons of a particular
business or businesses for which no parking fee is charged.
*Commercial parking lot* means either an unattended commercial parking lot or attended
commercial parking lot.
*Ticketing* means charging a penalty to a motor vehicle that is parked in a commercial
parking lot as a means of enforcing parking lot policies, in lieu of booting or towing.
*Unattended commercial parking lot* means a lot or garage used for the temporary storage
of passenger cars or trucks for a fee, and that is not staffed by an attendant. Unattended
commercial parking lots do not include residential parking areas.
(Ord. No. 5679, § 41.5-1, 3-6-2018)
…
Sec. 11-70-12. - Prohibited acts.

It is declared that the following acts are prohibited and unlawful and the license or permit of any person doing such acts may be revoked, suspended, placed on probation or not renewed:

A.  No vehicle affixed with a boot may be towed unless the owner of the vehicle fails to contact the booting company within 24 hours of the notice. All towed vehicles are subject to compliance with local ordinances.

B. No vehicle may be immobilized or ticketed without proof that the vehicle was illegally parked.

C.  Failure to remove a booting device within one hour of being contacted by the owner or operator of the vehicle that has been booted.

D.  For a booting and/or ticketing service to make any payment to an owner, employee, agent, or person in possession of a commercial parking lot in excess of the reasonable and customary parking fee ordinarily charged by the parking lot thereon.

E.  For any vehicle immobilization service to be licensed hereunder if that vehicle immobilization service is also engaged in the business of a parking lot or property where booting services are being performed.

F.  For any vehicle immobilization service and owner of a parking lot or property where booting services are being performed to have any financial arrangement which result in a financial benefit related to the booting services.

G.  Any failure to comply with the requirements of chapter 11-70.

(Ord. No. 5679, § 41.5-12, 3-6-2018)

Sec. 11-70-13. - Hearings for license application.

A.  Prior to the issuance of any license provided per this chapter, the Memphis Transportation Commission shall hold a hearing for the applicant after giving the applicant at least a 15-day notice of the time and place of such hearing.

B.  The Memphis Transportation Commission is empowered to make all such rules and regulations which it considers necessary and proper for any hearings provided for by this chapter.

(Ord. No. 5679, § 41.5-13, 3-6-2018)

Sec. 11-70-14. - Hearing for suspension, revocation or probation and after refusal to renew license or permit.

A. Hearing before permits administrator. If it appears that a booting or ticketing company has violated any permit holder has violated any of the aforementioned requirements or rules and regulations, the permits administrator shall have the authority to conduct a hearing with the booting/ticketing service representatives and/or license holder upon 48 hours' notice. If violations are found to have occurred, the permits administrator may suspend the license and/or permit up to a period not to exceed ten days and/or administer a fine in conjunction with the rules and regulations of the Memphis Transportation Commission. Upon expiration of the suspension, the booting/ticket license and/or permit will not be reinstated until such time that the requirement, rule or regulation violation is corrected and the booting/ticketing company meets all provisions of this chapter. Any decision by the permits administrator may be appealed within five days to the transportation commission.

B. Appeal hearing before transportation commission. At such any appeals hearing before the transportation commission the booting/ticketing company shall be allowed to answer

such charges and respond to the decision of the permits administrator. The rules and regulations of the transportation commission shall apply for any penalties levied against the booting/ticketing company including but not limited to fines, suspensions, probation and/or revocations. Penalties are not subject to appeal, as the decision of the transportation commission being final.

(Ord. No. 5679, § 41.5-14, 3-6-2018).

30. Nothing in the above ordinance allows the Defendants to arrest Plaintiff, Plaintiff's employees or to even operate on private property.

31. After Plaintiff obtained an injunction against the City of Memphis, Defendants realized they were inappropriately criminalizing a civil ordinance, and they began conspiring with trespassing truck drivers who refuse to lawfully pay for parking on private lots to bolster Defendants' attempt to legitimize its discriminatory conduct.

32. On June 6, 2023, a truck was illegally parked on S-Line's parking lot. S-Line contacted A-1 Towing and Hauling to boot and/or remove the truck from its premises.

33. After several hours had passed, someone knocked on the door of the truck and the driver got out of the truck in an irate fashion refusing to pay for the boot or parking. After a number of conversations with the driver, the truck was connected for towing.

34. Once it was decided that the truck would be towed, the Memphis Police Department was notified that the truck was going to be towed. Someone else also contacted Defendants.

35. Officers from the Mt. Moriah Precinct came to the scene and stated that upper management has decided that the Plaintiffs can't charge for parking, and they cannot tow illegal parkers. The officers also stated that Plaintiff's company can't stop anyone from vandalizing the boots.

36. Lieutenant Byrd was asked about why Plaintiff's private security stop trespassers can't prevent vandals like other security companies. He stated if Plaintiff' attempts to stop

vandals or trespassers, they would be arrested.  Lieutenant Byrd did not respond after he received the authority of private security statute within the State of Tennessee.

37. On July 20, 2023, Defendant Hillyard conspired with a truck driver to manufacture charges to accomplish the City of Memphis and Defendants' discriminatory goals.  Specifically, undisputed information from the affidavit establishes that the driver parked on a private lot with signs that required the driver to pay to park. The driver admitted that he did not pay to park. Plaintiff's employee put a boot on the driver's vehicle and the driver admitted that he refused to pay to have the boot removed.  Plaintiff's employee called the police because the driver was now trespassing, and trespassers are towed from private property when they refuse to pay for parking or the boot.

38. Interestingly, the Memphis Police Department issued an Authorization of Agency (AOA) because the driver was trespassing and supposedly at the same time the driver was trespassing, the Plaintiff's employee was allegedly carjacking the trespasser's truck in front of the Defendant City of Memphis Police Department.  Even more troubling, after Defendant Hillyard was given a body camera video that established that Plaintiff himself never booted the vehicle at issue, or was involved in towing the vehicle at issue, and that the truck driver did not pay for the boot until after he was towed, he continued to maliciously prosecute the Plaintiff.

39. On July 2, 2023, Defendant Gary Williams conspired with another trucker driver to accomplish the City of Memphis' discriminatory goals. In the affidavit prepared by Defendant Williams, he states that the truck driver admitted to parking on private property that has signs requiring any person parking on the property to pay for parking.  Defendant Williams also admits that the trespassing truck driver refused to pay for the boot until after

his vehicle was hooked up for towing.  Interestingly, Defendant Williams stated just because a Black licensed armed security approached that illegal parker with a clip board, that magically, the truck driver was carjacked.

40. Defendant Williams' conduct was so egregious that he disregarded City of Memphis and Shelby County Policy to forum shop for a high bond in the Shelby County Criminal Court to obtain and achieve his discriminatory intent.

41. In particular, Defendant Williams and Hardaway made their intentions of "running Plaintiffs out of business or out of town" known.  During a hearing before a General Sessions Court Judge, Defendant Williams was scolded by the Judge for circumventing all normal procedures to obtain a $500,000.00 dollar bond against one of the Plaintiff's employees. Defendant Williams was asked during Court how many times has the police department been told about forum shopping? He was also asked was and he the City of Memphis Police Department familiar with the rules to obtain a bond.

42. Defendant Williams admitted he was familiar with the rules but he admitted before the Judge that he and his superiors wanted to make it expensive for the Plaintiff to carry out his business in Memphis.  The Judge admonished Defendant Williams about forum shopping.

43. On July 5, 2023, On July 2, 2023, Defendant Bryant conspired with another trucker driver to accomplish the City of Memphis' discriminatory goals.  In the affidavit prepared by Defendant Bryant, Defendant Bryant intentionally left out and disregarded the facts for his discriminatory purpose.  Specifically, it is undisputed that Memphis Police were called because McLaurin parked on a private parking lot without paying.  McLaurin admitted that he did not pay to park and was booted.  Defendants were called because McLaurin pulled a good on the Plaintiff's private security.  Upon Defendants' arrival, they refused to act against

McLaurin for his conduct. In fact, Defendant, City of Memphis' officers stated that we are not going to do anything and left.

44. After the police left, McLaurin got out of his truck and threatened Plaintiff's private security Company. While information was being gathered to tow McLaurin's vehicle, he pushed the security guard on numerous occasions and attempted to slam the hood on one of the tow personnel. Mr McLaurin was subdued and handcuffed by private security. Defendant, City of Memphis Police Department was called.

45. Upon arrival, Defendant Bryant decided that he was going to arrest private security and charged them both with aggravated assault. Defendant Bryant also decided to let McLaurin go and refused to accept any complaint by Plaintiff's employees because he stated "we don't like your business."

46. On July 18, 2023, Defendant Hardaway conspired with another trucker driver to accomplish the City of Memphis' discriminatory goals. In the affidavit prepared by Defendant Hardaway, he states that the truck driver admitted to parking on private property that has signs requiring any person parking on the property to pay for parking. Defendant Hardaway states it is a crime for Black licensed, armed security guards to have holstered guns. Defendant Hardaway acknowledges that the truck driver did not pay for parking and did not pay for the boot. He states that Plaintiff's employees beat up the driver after he paid for the boot. However, Defendant Hardaway was provided a video that disputed every allegation. The video established that the driver did not pay for parking. The video established that Plaintiff's employee attempted to assist the driver for more than two hours and his dispatch could not pay. The video also establishes that there were never five people around the truck

driver.  The video also established that no one touched the driver.  The video establishes that after the truck driver's company did not pay, the truck was towed.

47. The video also establishes that after the driver's truck was towed, he was standing next to an employee and at no point did he complain about being touched by anyone.  You can calmly see him telling his dispatch that "they are towing my truck."  Then you hear the truck driver say "Siri dial 911."

48. Plaintiff's counsel provided a copy of the above video to the Shelby County Prosecutor and her only comment was, "I thought the maximum you could charge for a boot is fifty dollars."  When stated that the fifty-dollar issue is in Shelby County Chancery Court and the ordinance you are talking about is civil, the Shelby County Prosecutor  had no response.  She also had no response when asked, "how is this carjacking?"

49. On August 29, 2023, Defendant Gibson conspired with another trucker driver to accomplish the City of Memphis' discriminatory goals. In the affidavit prepared by Defendant Gibson, he states that the truck driver admitted to parking on private property that has signs requiring any person parking on the property to pay for parking.  Defendant Gibson stated that Plaintiff's employees were in violation of City ordinance § 11-70-12 and if they did not release the boot they would be arrested.  Plaintiff's employee refused and they were arrested for "Theft of property" for attempting to tow a vehicle.

50. After the Plaintiff's employees were arrested, the Plaintiff's vehicle was towed and the boot was vandalized on the instruction of Defendant Gibson.

51. Defendant Hardaway made his discriminatory intentions known when he ignored video evidence that refuted all allegations made against Plaintiff's company.  In fact, Defendant Williams stated he did not care, and that it is his intent to shut the Plaintiff's business down.

When informed that booting is controlled by the State of Tennessee, Defendants stated "we don't care and we are going to instigate RICO action because Plaintiff's prices are too high."

52. Defendants were on notice that on July 1, 2023, the State of Tennessee passed the Booting Consumer Protection Act, codified at T.C.A. §47-18-3201, *et seq.*, which superseded all municipal ordinances on booting.  Defendants were also on notice that according to the Tennessee General Assembly's adoption of the Booting Consumer Protection Act, only the Attorney General of the State of Tennessee could investigate or regulate booting across the state. Instead of allowing the State of Tennessee to do its job, the City of Memphis and Defendants increased its harassment against the Plaintiff.

53. Defendants were also on notice that Plaintiff had filed an injunction against the City of Memphis for weaponizing a civil ordinance.  Whenever any of the Defendants were asked how can you criminalize a civil ordinance,  they would consistently state "we are the Memphis Police Department, and we can do whatever we want."

54. On one occasion, Defendant Morris, badge number 0427, stated that he was going to call dispatch and reverse the call notifying the dispatch that the vehicle is being towed.  He arrested one of the Plaintiff's employees stating that "I will make an example out of you".

55. On another occasion, Lieutenant Parks stated that he was going to impound Plaintiff's tow truck from private property and place an indefinite hold on the truck to prevent towing and booting on private property.

56. On another occasion, an officer from Mt. Moriah precinct told the Plaintiff, that "you cannot charge for parking, and we are going to arrest you every time."  The officer went on to say that he knows the charges will not stick but he is going to keep doing this until Plaintiff stop charging, booting and towing illegal parkers on private pay parking lots.

57. Plaintiffs attempted to provide proof that the truck was towed legitimately, and the driver refused to pay for illegal parking on private property.  Defendants have stated that the illegally parked vehicle does not have to pay for parking on private property and that they could leave.  Defendants further told the Plaintiff, that if they don't release vehicles when they tell them to, all of their employees would go to jail for "theft of property" and "obstructing governmental operations."

58. Plaintiff has attempted to explain to Defendants that S-Line hired Plaintiff's company to tow and boot illegal parkers off private for pay property.  The City of Memphis has approved A-1 Towing with a license to tow and boot in the City of Memphis.  Moreover, S-Line is a company that is authorized to do business in Tennessee. When Plaintiff has stated that they will leave the boot on and not tow, Plaintiff and the security were told they couldn't do any business on its private lots even though S-Line and A-1 Towing have valid licenses in the state of Tennessee and the City of Memphis.

59. Defendants decided that Plaintiff is not authorized to do business in the City of Memphis regardless of what licenses they hold, and that Plaintiff would be arrested to prove a point. Defendants further decided that Plaintiff 's tow truck would be towed from a private lot by a white company not authorized to do business on S-Line's parking lot.

60. In particular, Defendant Morris, Defendant Hardaway, Defendant Lewis, Defendant Williams, Defendant Bryant, Defendant Gibson, and Defendant Wilson, with the complicity of the Mount Moriah Police Precinct and police officers of the City of Memphis Police Department, began harassing Plaintiff's workers with the full knowledge that private owners have the right to enforce parking on private property.  Regardless, the individual Defendants attempted to violate Plaintiff's rights in the following ways:

a. Routinely requiring law enforcement officers from the City of Memphis to solicit complaints from illegal parkers even though illegal parkers had failed to pay for parking on property patrolled by the Plaintiff to harass and intimidate Plaintiff from doing business in Memphis.

b. Requesting and requiring that law enforcement officers from the City of Memphis to weaponize/criminalize a civil municipal ordinance by routinely stopping workers from booting and towing illegal parkers on private property without probable cause to harass and intimidate Plaintiff from doing business in Memphis. Many times these workers are not provided any legitimate justification for the stop and arrest. A number of times no arrest were made if the employees agree to allow the parking violator to leave with paying for a boot or towing.

c. Requesting and requiring law enforcement officers from the City of Memphis to routinely criminalize a civil ordinance to Plaintiff's detriment.

d. Requesting and requiring that officers arrest employees' of Plaintiff's for crimes, which include providing private security, preventing vandalism and trespass without probable cause which has lead to the dismissal of many charges against Plaintiff's employees.

61. Defendants conduct was so bad on June 19, 2023, Plaintiff along with his contractor filed an injunction against the City of Memphis for its conduct of turning a municipal ordinance into a criminal ordinance and arresting his employees for enforcing parking violations and preventing trespassing and vandalism on one of his subcontract employees.

62. After the Chancellor signed an injunction prohibiting Defendants from illegally arresting and threatening Plaintiff's employees for controlling illegal parking on private pay parking lots, Defendants doubled down and increased the harassment and arrest.

63. After the court's injunction and the State of Tennessee issuing a new booting statute, Defendants' conduct was so bad that Chancery Court had to issue a new order against the City of Memphis and Defendants because Defendants arrested two of Plaintiff's employees for violating the City of Memphis ordinance and somehow twisted it into aggravated assault and driving without a license while sitting still at a parking lot.

64. On October 31, 2023, Defendants were called because a truck driver pulled a pipe and swung it at one of the Plaintiff's employees and started beating off a boot after the driver illegally parked. Defendants arrived on the scene, witnessed the threats and vandalism against Plaintiff's employee and then told Plaintiff's employee that the threats and illegal parker beating off the boot in front of the police officer was a private matter and he would arrest Plaintiff's employee if he attempted to stop the person from vandalizing the boot. Defendants went on to say that Plaintiff could not press charges, could not file an Internal affairs report, nor stop the trespassing vandal. The trespassing vandal went on to beat off another boot while a Memphis Police officer supervised the conduct.

65. After the Court issued an injunction against the Defendants, members of the Detective bureaus were told by management, we need to document everything possible about the Plaintiff so that we can put them out of business.

66. In fact, after the Court issued an injunction against the Defendants, Defendant, City of Memphis, by and through its legal counsel, the City Attorney's Office, inappropriately and maliciously conspired with the Memphis Permits Office and its officer, Yolonda Fullilove, to revoke Plaintiff's towing and booting license in the City of Memphis without due process of law, and tried to deprive Plaintiff of his due process right of a hearing before the Permits Board in order to sack Plaintiff and strip Plaintiff's company of its towing and booting license in the City of Memphis.

67. In fact, Defendants told Plaintiff's employees that they needed to find a new job because Ms. Fullilove is going to pull his license at the next hearing. Interestingly, it appears that Ms. Fullilove's duty to be fair and impartial has been skewed in favorite of discrimination

towards the Plaintiff to foster the defendants intent to discriminate against the Plaintiff and to put the Plaintiff out of business without due process.

68. Defendants have treated the Plaintiff and his company different that similarly situated white towing and booting companies, such as PB&J, by harassing Plaintiff and his employees, depriving Plaintiff of his constitutional right to enter into contracts, depriving Plaintiff, Plaintiff's employees of the ability to perform on Plaintiff's company's contracts with his contractors, arresting Plaintiff and his employees and charging them with unfounded charges, slandering Plaintiff's name, employees and business in the local media, attempting to pull and revoke Plaintiff's license to tow and boot in the City of Memphis without due process of law, and unlawfully discriminating against Plaintiff and his employees on the basis of his race.

69. The Memphis Police Department Policies and Procedures update January 31, 2020 cite that all Memphis Police Officers will adhere to the Law Enforcement Code of Ethics which provide in part:

As a law enforcement officer, my fundamental duty is to serve mankind; to safeguard lives and property, *to protect the innocent against deception*, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to *respect the Constitutional rights of all persons to liberty, equality and justice.* . . . Emphasis added.

Additionally, the Code requires officers to be "Honest in thought and deed"

Also, the Code states:

The public demands that the integrity of its law enforcement officers be above reproach, and the dishonesty of a single officer may impair public confidence and cast suspicion and disrespect upon the entire Department. Succumbing to even minor temptation can be the genesis, which will ultimately destroy an individual's effectiveness and contribute to the corruption of countless others. A member must scrupulously avoid any conduct, which might compromise the integrity of themselves, their fellow members or the Department.

Finally,

"The rights of the member, as well as those of the public, must be conducted fairly, impartially and efficiently, *with the truth as its primary objective*."  Emphasis added.

Memphis Police Department Policy and Procedures, Revised January 31, 2020 Citing requirement of Memphis Police Officers to adhere to the Law Enforcement Code of Ethics (1.1.2).

70. Defendants violated the City of Memphis' policies and procedures by targeting the Plaintiff and his business because of its minority status with the intent to discriminate.

## HISTORY OF DISCRIMINATION AGAINST MINORITIES AND MINORITY BUSINESS

71. It is undisputed that Defendant Davis knew or should have known on June 19, 2023 when Plaintiff filed a civil suit for injunction and declaratory action that Ordinance 11-70 is a civil ordinance and ordering or allowing police officers under her command to continue to discriminatorily weaponize a civil ordinance is reckless disregard to Plaintiff's constitutional rights.

72. Moreover, it was crystal clear that Defendant Davis knew or should have known that her officers' conduct was problematic after the Court entered an emergency order, and establishes that she was on notice that her officers were out of control. Defendant Davis she still did nothing to control her officer's discriminatory conduct amounts to reckless disregard of plaintiff's constitutional rights.

73. On one occasion, the Memphis Police Department engaged in a plan to shut down a minority business because he repossessed cars when customers failed to pay.  The Police Department manufactured seven charges of aggravated assault against the business owner in an attempt to shut down his business. The police lied while filing an affidavit under oath in an attempt to make the minority business owner into a villain.

74. On another occasion, in an attempt to retaliate discriminate against a minority, Defendant City of Memphis utilized its power to a villainize a person by putting her in a security book in an attempt to retaliate against the person for exercising her rights.

75. On another occasion, Defendant City of Memphis Police Department beat up and arrested Michael McDonald and Quinton Lytle after using racist comments, and excessive force towards them because the officer could not impose his will on McDonald and Lytle.

76. On another occasion, Defendant City of Memphis Police Department brutally beat a man to death simply because he was a minority and the police officers did not like the gentleman. As in each of these cases, the Defendant, City of Memphis employees lied to develop a narrative that supported their discriminatory conduct and treatment of minorities.

77. Defendant, City of Memphis' conduct has been so egregious and out of control the United States Attorney General for the Western District of Tennessee instigated a civil rights investigation against the City of Memphis because of how its Police Department treats minorities and minority business.

78. A nonminority company, PB&J, had thousands of complaints of improper booting and towing of vehicles.

79. In fact, PB&J was fined on numerous occasions by the City of Memphis, but it was never threatened with a predeterimination by the City Administrator that the administration guarantees it will take its license.

80. It was also complained that PB&J was actually towing people that in fact parked legitimately.

81. None of PB&J employees were arrested or indicted by any of the Defendants for towing or booting in violation of a civil ordinance.

82. Defendant Davis has a history of allowing police officers to harass and beat up minorities in minority communities.  Her conduct towards minorities led to her termination in Georgia based on conduct of the FED DOG squad developed by her and the death of Tyree Nichols under the SCORPIAN squad also developed by Defendant Davis.

## COUNT I

83. Plaintiffs adopt and incorporate by reference herein each and every action of this Complaint as if fully set forth herein verbatim.

84. Defendants committed the above-described actions and/or omissions under the color of law and by virtue of their authority as officials of the City of Memphis and substantially deprived the Plaintiff of his clearly established rights, privileges and immunities guaranteed to them as citizens of the United States in violation of 42 U.S.C Section 1983, and deprived the Plaintiff of the rights guaranteed to him by the Fourth and Fourteenth Amendments of the United States Constitution including, but not limited to:

    a.    Deprivation of his right to freedom of association under the First Amendment;

    b.    Deprivation of his right to the pursuit of life, liberty and happiness protected under the Fourteenth Amendment;

    c.    Unlawful taking of his property and property interest in running a legitimate establishment without due process of law protected under the Fourteenth Amendment;

    d.    Freedom from arbitrary governmental activity which shocks the conscience of a civilized society protected under the Fourteenth Amendment;

    e.    Freedom from intentional differential treatment without a legitimate governmental basis protected under the equal protection clause of the Fourteenth Amendment;

    f.    Freedom from selective enforcement and treatment protected under the equal protection clause of the Fourteenth Amendment.

    g.    Freedom from unequal enforcement of the laws based on animosity and ill-will protected under the equal protection clause of the Fourteenth Amendment;

    h.    Impairment of ability to enter into contracts.

    i.    Deprivation of his right under the fourth of unlawful search and seizure.

    j.    Defendants conspired to discriminate plaintiff's business with an intent deprive him of his constitutional rights.

85. As previously set forth herein, the Defendants actions were motivated by ill-will, malice and spite towards the Plaintiff due to his operation of a lawful business because it booted or towed parkers who refused to pay for parking on a private lot.  Plaintiff submits that this is an impermissible basis for the Defendants' actions and has resulted in him being singled out for harsher and discriminatory treatment than other similarly situated nonminority businesses in the City of Memphis, and other citizens in the State of Tennessee such as PB&J and other booting and towing companies in violation of his constitutional rights.

86. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff's constitutional rights were violated and Plaintiff sustained injuries and damages.

## COUNT II

87. Plaintiff adopts and incorporates in this Count all of the averments of this Complaint.

88. Plaintiff engaged in protected speech by relating his complaints of harassment, discrimination and intimidation to officials of the City of Memphis, elected officials and the Shelby County District attorney to no avail.  Plaintiff's speech touched upon a matter of public concern.

89. Plaintiff speech was a protected activity; Defendants were aware of the protected activity; and Plaintiff's' engagement in the protected activity was the motivating factor in the Defendants continued harassment and discrimination in violation of their rights under the First Amendment to the U.S. Constitution.

## COUNT III

90. Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference makes said Paragraphs a part hereof as if fully set forth herein.

91. The City of Memphis is under a duty to run its operations and police activities in a lawful manner, preserving to the citizens of the City of Memphis the rights, privileges and immunities guaranteed by the Constitutions of the United States of America and the State of Tennessee and the laws of the United States of America and the State of Tennessee.

92. As set forth herein, Defendant City of Memphis adopted, permitted, encouraged, tolerated, and knowingly acquiesced to an official pattern, practice or custom of its officials, including the individual defendants, violating the constitutional rights of the public at large, including Plaintiff.

93. Defendant City of Memphis is directly liable for the constitutional violations committed against the Plaintiff because the constitutional violations were committed by the official policy makers for the City of Memphis, Defendants and Defendant Chief of Police.

94. Further, Defendant City of Memphis is liable for the actions of the individual Defendants and other officers and employees of the City of Memphis because the City of Memphis, by and through Defendants instituted an official policy, practice, custom and campaign of harassment and intimidation against the employees of Plaintiff's business for the express purpose of precluding the Plaintiff from operating a lawful business.

95. Alternatively, the City of Memphis is liable for the actions of the individual Defendants under the doctrines of agency, vicarious liability, employer-employee relations, master-servant, respondeat superior, joint venture, contract and as a result of their non-delegable duty to provide officials who comply with the constitution and laws of the United States and the State of Tennessee.

96. As a direct and proximate result of the foregoing policies, practices and customs of the City of Memphis, the Plaintiff's constitutional rights were violated and he was injured and damaged.

## COUNT IV

97. Plaintiff adopts and incorporates in this Count all of the averments of this Complaint.

98. Defendants through the City's spokesperson, negligently and repeatedly published false allegations against Plaintiff.  These allegations were false and defamatory to Plaintiff.

99. As stated *supra*., Defendants conspired with trespassers in an attempt to defame and discriminate against the Plaintiff.

100.    The statements made by Defendants and law enforcement officers were false and designed to impeach Plaintiff's honesty, integrity, virtue, and reputation from both a personal and business standpoint.

101.    Defendants were, at the very least, negligent in failing to ascertain the truth of the numerous false and defaming statements regarding Plaintiff.

## COUNT V

102.    Plaintiff adopts and incorporates in this Count all of the averments of this Complaint.

103.    Defendants did knowingly intimidate, discriminate and harass the Plaintiff as a result of the free exercise and enjoyment of his constitutional rights under the First and Fourteenth Amendment of the United States Constitution which constitutes malicious harassment under T.C.A. Section 4-21-701, *et seq*.

104.    Defendants are jointly and severally liable to the Plaintiff for all of their damages, including punitive damages, loss of income, emotional distress and attorney fees and costs.

**COUNT VI**

105.     Plaintiff adopts and incorporates in this Count all of the averments of this Complaint.

106.     Defendants did knowingly intimidate, discriminate and harass the Plaintiff with the express purpose of interfering with his business relationship with his customers.

107.     In particular, the Defendants, individually and collectively, knew that the Plaintiff had a business relationship with customers that would retain his services, that the Defendants intended to interfere with the relationship with Defendants and his customers by engaging in a pattern and practice of harassing Plaintiff's employees in an effort to put the Plaintiff out of business, that the Defendants' motive for attempting to close Plaintiff business was improper as Plaintiff was running a lawful business and Plaintiff has sustained damages as a result of the Defendants' conduct.  Therefore, Defendants' conduct alleged herein constitutes the tortuous interference with existing and future business relations with its customers entitling the Plaintiff to damages.

**COUNT VII**

108.     Plaintiff adopts and incorporates in this Count all of the averments of this Complaint.

109.     Defendants conduct alleged herein was willful, intentional, reckless, malicious and fraudulent entitling the Plaintiff to a substantial award of punitive damages.

**COUNT VIII**

110.     Plaintiff adopts and incorporates in this Count all of the averments of this complaint.

111.      Defendants have continuously interfered with Plaintiff's business relationship with his customers and others in the community with improper motive or means, and that Defendants had knowledge of this relationship and have, through their conduct, caused Plaintiff to suffer damages.

## DAMAGES

112.      Plaintiff adopts and incorporates in this Count all of the averments of this Complaint.

113.      As a direct and proximate result of the aforementioned actions and omissions of the Defendants, Plaintiff's constitutional and state law rights were violated, and he was injured and damaged.  Plaintiff seeks recovery from the Defendants, both jointly and severally, of all damages to which he may be entitled under both state and federal law for the injuries and damages him and which include, but are not limited to, the following:

a.      Physical Pain and Suffering of a past, present and future nature;
b.      Emotional Pain and Suffering of a past, present and future nature;
c.      Loss of Enjoyment of Life of a past, present and future nature;
d.      Lost profits, earning and wages;
e.      Punitive damages against the applicable Defendants;
f.      Embarrassment and humiliation and harm to his personal and professional reputation;
g.      Statutory and Discretionary Costs;
h.      Attorney's fees;
i.      A declaratory judgment that the acts and conduct herein was unconstitutional;
j.      Injunctive relief precluding the Defendants from engaging the conduct complained of herein in the future and requiring the City of Memphis to provide proper policy, training and supervision of its officers and holding them accountable for their misconduct;
k.      All such further relief, both general and specific, to which he may be entitled under the premises.

## **PRAYERS FOR RELIEF**

114.      Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint and by reference makes said Paragraphs a part hereof as if fully set forth herein.

115.     **WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues the Defendants, both jointly and severally, for his injuries and damages and prays for a judgment against the Defendants for compensatory damages in an amount to be determined by a jury as reasonable and for all such further relief, both general and specific, to which they may be entitled under the premises.

116.     **WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues Defendants, both jointly and severally and prays for a judgment against the applicable Defendants for punitive damages in an amount to be determined by a jury as reasonable to punish the Defendants and deter others from engaging in similar conduct and for all such further relief, both general and specific, to which he may be entitled under the premises.

Respectfully Submitted,

s/Darrell J. O'Neal

_____
Darrell J. O'Neal (BPR # 20927)
LAW OFFICE OF DARRELL J. O'NEAL
2129 Winchester Road
Memphis, Tennessee 38116
(901) 345-8009 telephone
(901) 345-8014 facsimile
domemphislaw@darrelloneal.com
*Attorney for Plaintiff*