**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| COLTON CATHEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 2:23-cv-02707-SHL-tmp |
| | ) |
| CITY OF MEMPHIS, CHIEF CERELYN | ) |
| DAVIS, in her individual and official capacity, | ) |
| LIEUTENANT JOHN MORRIS, SERGEANT | ) |
| LACY L. HARDAWAY, in his individual | ) |
| capacity, SERGEANT GARY L. WILLIAMS, | ) |
| in his individual capacity, SERGEANT | ) |
| RICHARD K. HILLYARD, in his individual | ) |
| capacity, TASHEKA C. BRYANT, in his | ) |
| individual capacity, L. GIBSON, in his | ) |
| individual capacity, CHRISTOPHER | ) |
| WILSON, in his individual capacity, and | ) |
| JOHN DOES 1-5, individually and in their | ) |
| official capacities as City of Memphis Police | ) |
| Officers, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THE
CITY OF MEMPHIS AND OTHER MUNICIPAL DEFENDANTS, GRANTING IN
PART AND DENYING IN PART MOTION TO AMEND, AND DENYING WITHOUT
PREJUDICE AS MOOT INDIVIDUAL DEFENDANTS' MOTION TO DISMISS**

Before the Court is Defendants the City of Memphis, Memphis Police Department,

Director Cerelyn Davis, in her individual and official capacity, Memphis Police Department Lt.

John Morris in his official capacity, and Officers John Doe 1, 2, 3, 4, and 5 in their official

capacity's (collectively "Defendants") Motion to Dismiss the City of Memphis and Other

Municipal Defendants, filed December 18, 2023.  (ECF No. 20.)  Plaintiff Colton Cathey filed

his response on January 11, 2024.  (ECF No. 30.)  Defendants replied on January 25, 2024.

(ECF No. 36.)  On March 15, 2024, Cathey filed a Motion for Leave to Amend Complaint,

which included his Amended Complaint.  (ECF Nos. 37 & 37-1.)  Defendants responded on

March 25, 2024.  (ECF No. 38.)[1]  With leave of Court, Cathey filed a reply on April 8, 2024.

(ECF No. 43.)

For the following reasons, Defendants' Motion to Dismiss is **GRANTED IN PART**

**AND DENIED IN PART** and Cathey's Motion to Amend is **GRANTED IN PART AND**

**DENIED IN PART**.

### BACKGROUND[2]

In his Amended Complaint,[3] Cathey asserts that he "is a Black/African American male

business owner."  (ECF No. 37-1 at PageID 258.)  Cathey owns A1's Towing & Hauling a/k/a

A1's Xclusive Auto AXA, LLC ("A1"), based in Shelby County, Tennessee.  (Id.)  A1 tows or

boots illegal parkers for private owners on private property.  (Id.)

According to Cathey and A1, Cathey "has been subjected to unlawful harassment and

intimidation at the hands of the City of Memphis," and the individually named Defendants.  (Id.

at PageID 259.)  He alleges that Defendants have targeted him and A1 "for closure because

Plaintiff and his company legally boots and tows illegal parkers on private property and because

the Plaintiff and his company is minority (Black) owned."  (Id.)  He contends that Defendants

have "singl[ed] him and his company out for harsher treatment than similarly situated White

towing and booting companies and their owners because of their animosity toward him and his

company because they are minority and minority owned."  (Id. at PageID 260.)

---

[1] Defendants Lt. John Morris, Sgt. Lacy L. Hardaway, Sgt. Gary L. Williams, Sgt. Richard K. Hillyard, Sgt. Tasheka C. Bryant, Officer L. Gibson, and Officer Christopher Wilson, in their individual capacities, responded to the motion to amend on March 29, 2024, indicating they "do not oppose the amendments."  (ECF No. 39 at PageID 333.)

[2] Because the Court is granting in part Cathey's Motion for Leave to Amend Complaint, the Court refers to the Amended Complaint herein, accepting as true those allegations for purposes of these Motions only.

[3] Cathey filed his original complaint on November 5, 2023.  (ECF No. 1.)

Plaintiffs contend that Defendants weaponized a civil municipal ordinance governing booting and towing of vehicles.  (See Memphis Mun. Ord. § 11-70-1, et seq.)[4]  Defendants allegedly did so in a variety of ways, including by arresting or threatening to arrest him and his employees.  (ECF No. 37-1 at PageID 265.)  Cathey and A1 accuse the individual Defendants of conspiring with truck drivers to accomplish the City of Memphis and Defendants' discriminatory goals.  (Id. at PageID 266–69.)  According to Cathey and A1, Defendants repeatedly suggested that it was their intent to shut down A1.  (Id. at PageID 260–61, 270.)

On June 9, 2023, Cathey filed a lawsuit in Shelby County Chancery Court seeking injunctive and declaratory relief.  (See ECF No. 20-3.)[5]  That lawsuit alleged claims of false imprisonment and malicious prosecution, and contained many of the same, sometimes verbatim, allegations as those asserted in the case before this Court.  (See ECF No. 20-1 at 127–28.)  Cathey asserts here that, after that lawsuit was filed and an injunction was issued against the defendants, the City, through its legal counsel, "inappropriately and maliciously conspired with the Memphis Permits Office . . . to revoke Plaintiff's towing and booting license in the City of Memphis without due process of law, and tried to deprive Plaintiff of his due process right of a hearing before the Permits Board in order to sack Plaintiff and strip Plaintiff's company of its towing and booting license in the City of Memphis."  (ECF No. 37-1 at PageID 273–74.)

---

[4] Cathey contends that the Booting Consumer Protection Act, Tennessee Code Annotated § 47-18-3201, went into effect on July 1, 2023, and superseded all municipal ordinances on booting.  (ECF No. 37-1 at PageID 270.)

[5] While this case has been pending, Cathey filed two additional lawsuits in Shelby County Chancery Court.  He filed the first, A1's Xclusive Auto AXA, LLC d/b/a A1 Towing & Hauling v. City of Memphis, CH-24-0265, on February 29, 2024.  (ECF No. 38-1.)  He filed the second, A1's Xclusive Auto AXA, LLC d/b/a A1 Towing & Hauling v. City of Memphis and Transportation Commission, CH-24-0312, on March 7, 2024.  (ECF No. 38-2.)

According to Cathey,

> Defendants have treated the Plaintiff and his company different tha[n] similarly situated white towing and booting companies, such as PB&J, by harassing Plaintiff[] and his employees, depriving Plaintiff and Plaintiff A1's employees of their constitutional right to enter into contracts, depriving Plaintiffs and Plaintiff A1's employees of the ability to perform on Plaintiffs' contracts with their contractors, arresting Plaintiff and Plaintiff A1's employees and charging them with unfounded charges, slandering Plaintiffs' name, employees and business in the local media, attempting to pull and revoke Plaintiffs' license to tow and boot in the City of Memphis without due process of law, and unlawfully discriminating against Plaintiff Cathey and Plaintiff A1's employees on the basis of Plaintiff Cathey's race and minority company status.

(Id. at PageID 274.)

Cathey and A1 allege multiple bases for relief in the Amended Complaint, including a claim under 42 U.S.C. § 1983 for violation of their rights under the First, Fourth and Fourteenth Amendments; vicarious liability against the City for the actions of the individual Defendants; defamation; malicious harassment; and tortious interference with existing and future business relationships.  (ECF No. 37-1 at PageID 279–84.)  Plaintiffs also seeks punitive damages.  (Id. at PageID 284.)

## ANALYSIS

Defendants assert multiple grounds for dismissal, including that the Court lacks jurisdiction over Cathey' claims because he lacks standing, and that the Court should abstain from exercising jurisdiction under both the Colorado River and Younger abstention doctrines. Defendants also argue that Cathey's complaint fails to state a claim for relief under Rule 12(b)(6) for multiple reasons.

As explained below, Cathey has established standing, particularly in his Amended Complaint, therefore abstention is inappropriate.  At the same time, Cathey has failed to state a claim for relief as to several of his claims, both in his original and amended complaints.  He will therefore be allowed to amend his complaint, consistent with the terms outlined below.

I.      **Whether Cathey has Standing and the Motion to Amend**

Defendants assert that Counts I, III, IV, V, and VI should be dismissed, along with Cathey's requests for declaratory and injunctive relief, because Cathey lacks standing to bring claims on behalf of A1, "a Tennessee single-member, member-managed LLC, of which Mr. Cathey is the presumptive sole member." (ECF No. 20-1 at PageID 132.) Cathey counters that he not only has alleged myriad examples of Defendants' behavior against "his business[] and other minorities and minority business owners" (ECF No. 30 at PageID 207), but also against him as an individual.

Defendants concede that "[c]ompanies such as A1, like individuals, have constitutional rights and can enforce said rights through litigation." (ECF No. 20-1 at PageID 132 (citation omitted).) They contend that "it is A1, not Mr. Cathey, with the standing to litigate injuries to the LLC." (Id.) Defendants are correct that, as the lone Plaintiff in the original Complaint, Cathey cannot bring claims on behalf of A1, a limited liability company. See Tackett v. Pieri, No. 3:22-CV-00798, 2023 WL 5159418, at *1 (M.D. Tenn. July 26, 2023), report and recommendation adopted, 2023 WL 5155284 (M.D. Tenn. Aug. 10, 2023) (finding that plaintiff lacked standing to assert claims on behalf of an allegedly harmed limited liability company). Defendants are also correct that Cathey's original Complaint frequently conflates A1's interests with his own. (See, e.g., ECF No. 1 at PageID 7 ("Defendants did unlawfully detain Plaintiff's employees and violated Plaintiff's constitutional rights under the Tennessee Constitution, City Ordinances and Tennessee State Statutes, and tried to interfere with Plaintiff's lawful constitutional right to enter into contracts."); id. at PageID 17 (outlining four ways in which Defendants "attempted to violate Plaintiff's rights," and describing actions taken mostly against A1).

However, the original Complaint also contains allegations that Cathey himself was harmed by Defendants' actions.  For instance, as Defendants concede, Cathey "claims Sgt. Richard Hillyard falsely accused him of carjacking by booting and towing a trespassing truck, whose driver refused to pay for parking."  (ECF No. 20-1 at PageID 129.)  Elsewhere, Cathey states that he "has been subjected to unlawful harassment and intimidation at the hands of the City of Memphis" and several of the individual Defendants.  (ECF No. 1 at PageID 6.)  He alleges that "Defendants have performed the actions alleged herein described with personal animosity, malice, and ill-will towards the Plaintiff because of his race."  (Id. at PageID 7.)  When viewed in a light most favorable to Cathey, these allegations state claims on his behalf, not just A1's.  Though at times inartfully plead, Cathey's original Complaint states claims on his own behalf, giving him standing.

Moreover, in addition to adding more factual support for his claims, Cathey's Amended Complaint adds A1 as a party to this action.  (See ECF No. 37-1.)  Deciding whether to grant leave to amend requires consideration of several factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  Skatemore, Inc. v. Whitmer, 40 F.4th 727, 737 (6th Cir. 2022), cert. denied, 143 S. Ct. 527 (2022) (quoting Parchman v. SLM Corp., 896 F.3d 728, 736 (6th Cir. 2018)).

In their opposition to Cathey's Motion to Amend, Defendants do not address the implications adding A1 as a party have on their arguments related to standing.  Instead, they assert only that amendment would be futile, focusing their opposition mainly on their argument

that abstention is appropriate.[6]  But, as is explained in more detail below, to the extent that

Cathey's original Complaint created standing issues by asserting claims on behalf of A1, those

issues are remedied by the Amended Complaint's naming of A1 as a party.[7]  Defendants' Motion

to Dismiss based on Cathey's lack of standing is therefore **DENIED**.

## II.     Abstention under <u>Colorado River</u> and <u>Younger</u>

Defendants assert that, "if Plaintiff has standing to litigate on behalf of A1, then <u>Colorado</u>

<u>River</u> abstention is warranted in deference to Plaintiff's earlier filed Chancery Court action."

(ECF No. 36.)  According to Defendants, "[a]llowing both cases to proceed would result in

duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue."

(ECF No. 20-1 at PageID 135 (citation omitted).)  Cathey counters that <u>Colorado River</u>

abstention is inapplicable as the federal and state court proceedings are not substantially similar.

(ECF No. 30 at PageID 209–10.)

"In <u>Colorado River</u>, the Supreme Court held that federal courts may abstain from hearing

a case solely because there is similar litigation pending in state court."  <u>Bates v. Van Buren</u>

<u>Twp.</u>, 122 F. App'x 803, 806 (6th Cir. 2004) (citing <u>Colorado River Water Conservation District</u>

<u>v. United States</u>, 424 U.S. 800, 818 (1976)).  "The threshold question in <u>Colorado River</u>

---

[6] Defendants alternatively assert that, "[r]ather than state a case for unlawful discrimination, Mr. Cathey and A1 are admitting that they willfully violated City ordinances by attempting to boot and tow the vehicle after making contact with the owner of the vehicle and without waiting the requisite 24 hours."  (ECF No. 38 at PageID 296.)  Whether "the City's actions are not discriminatory, but directly proportionate responses to the commission of a crime" (<u>id.</u>), as Defendants suggest, is a question that is not appropriate to resolve at the motion to dismiss stage.

[7] Cathey's Amended Complaint adds two additional police officers as Defendants, more detailed descriptions of A1's business (<u>see</u> ECF No. 37-1 at PageID 263–265), as well as additional ways in which Defendants took actions that allegedly violated his rights, including by treating his company differently than similarly situated white companies (<u>id.</u> at PageID 274–76).  Although Cathey's Amended Complaint resolves the issues related to standing, it does not rescue many of the other claims that Defendants seek to dismiss.  Therefore, as is explained in more detail below, Cathey's Motion to Amend is **GRANTED IN PART AND DENIED IN PART**.

abstention is whether there are parallel proceedings in state court." Id. (citing Crawley v. Hamilton Cnty. Comm'rs, 744 F.2d 28, 31 (6th Cir. 1984)).  Abstention under this doctrine "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  Colorado River, 424 U.S. at 817. Nevertheless, although there are "certain very limited circumstances outside the abstention context in which dismissal was warranted in deference to a concurrent state court suit," federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Arizona v. San Carlos Apache Tribe of Arizona, 463 U.S. 545, 552 (1983) (quoting Colorado River, 424 U.S. at 817–19).

That obligation is present here.  In Colorado River, the Supreme Court's analysis began with the finding that the state court had jurisdiction over the Indian water rights at issue in the case, but only after it explained that dismissal of the federal suit "clearly would have been inappropriate if the state court had no jurisdiction to decide those claims."  424 U.S. at 809.

Defendants here "concede that claims for unliquidated damages, including such civil rights claims, are jurisdictionally barred in Chancery Court," where Cathey's original—and subsequently filed cases—are pending.  (ECF No. 36 at PageID 245 (citing Pauley v. Madison Cnty., No. 02A01-9607-CH-00161, 1997 WL 110019, at *3 (Tenn. Ct. App. Mar. 13, 1997) which provides that, under Tennessee Code Annotated § 16-11-102(a), chancery courts have no jurisdiction over claims for unliquidated damages for violations of civil rights).)  Defendants nevertheless suggest that, "[s]hould A1 seek to amend its Chancery Court Complaint to add the civil rights claims Plaintiff attempts to assert here, it may also request a transfer of its cause of action to Shelby County Circuit Court, pursuant to T.C.A. § 16-2-106."  (Id.)

The tenuous, multi-layered path that Defendants outline illustrates why abstention is inappropriate in these circumstances.  If the Court abstains under Colorado River, it is not clear

8

that Cathey's civil rights claims would end up being adjudicated in the state-court proceedings. The same is true if the Court employed <u>Younger</u> abstention.  Under that doctrine, "so long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain."  <u>Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 435 (1982).  Because it is not clear that Cathey's constitutional claims can be determined in the corresponding state proceedings, abstention under both <u>Colorado River</u> and <u>Younger</u> is inappropriate.  Defendants' Motion to Dismiss on these grounds is **DENIED**.

## III.    Failure to State a Claim Under Rule 12(b)(6)

Defendants assert that, even if Cathey has standing, several of his claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6).  That Rule allows the Court to dismiss a complaint for failure to comply with the requirements of Rule 8(a)(2).  Fed. R. Civ. P. 12(b)(6).  Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must contain sufficient facts to "state a claim to relief that is plausible on its face," meaning it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556, 570 (2007)).  The complaint need not set forth "detailed factual allegations," but it must include more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and "'naked assertion[s]' devoid of 'further factual enhancement.'"  <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555, 557).  When considering a 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  <u>Adkisson v. Jacobs Eng'g Grp., Inc.</u>, 790 F.3d 641, 647 (6th Cir. 2015) (internal citation omitted).

Defendants argue that Plaintiffs fail to state a claim against any individually named Defendant in his official capacity, as such suits against government employees are properly construed as complaints against the Government.  Defendants also assert that Plaintiffs fail to state a claim against Director Davis in her individual capacity under 42 U.S.C. §§ 1983 and 1986.  Defendants further state that Cathey fails to plead municipal liability under § 1983, that Cathey's claims under the First and Fourteenth Amendment fail to state a claim, that Cathey cannot recover punitive damages under § 1983 and, finally, that his state law claims fail as a matter of law.  Each of those arguments is addressed below.

A.     Official Capacity Claims Against Individual Defendants

According to Defendants, to the extent Cathey has asserted official capacity claims against the individuals, those claims are redundant and should be dismissed because, "where suit may be brought against a government, official capacity claims against government employees are construed as claims against the government."  (ECF No. 20-1 at PageID 126 n.1 (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978)).)  Ultimately, "[s]uing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself."  Kraemer v. Luttrell, 189 F. App'x 361, 366 (6th Cir. 2006).

Cathey does not contest this bedrock legal conclusion and, because his Amended Complaint appears to assert both official capacity claims as well as claims against the City of Memphis, it remains applicable to both the original and amended complaints.  Therefore, to the extent that Cathey and A1 have stated claims against the individual Defendants in their official capacity, he fails to state a claim in both his original and amended complaints.  The Motion to Dismiss the official capacity claims is **GRANTED**.

B.      Claims Against Director Davis in Her Individual Capacity

Defendants assert that Cathey has failed to state a claim for violations of his First, Fourth, and Fourteenth Amendment rights under §§ 1983 and 1986 against MPD Director Davis in her individual capacity because he fails to plead individual conduct amounting to the deprivation of a constitutional right, as well as based on qualified immunity.  (ECF No. 20-1 at PageID 139–40.) Cathey counters that that argument is "disingenuous when an injunction was issued against the City of Memphis, Chief Davis and the Memphis Police Department about her police department weaponizing a civil ordinance."  (ECF No. 30 at PageID 221.)

"A qualified immunity defense is 'available only to individual government officials sued in their personal capacity.'"  Rucker v. Shelby Cnty. Bd. of Educ., No. 2:23-cv-02358-SHL-cgc, 2023 WL 8258125, at *4 (W.D. Tenn. Nov. 28, 2023) (quoting Nugent v. Spectrum Juv. Just. Servs., 72 F.4th 135, 143 (6th Cir. 2023)).  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, (1982)).

Importantly, "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."  Heyerman v. Cnty. of Calhoun, 680 F.3d 642, 647 (6th Cir. 2012) (citing Murphy v. Grenier, 406 F. App'x 972, 974 (6th Cir. 2011) for the proposition that "[p]ersonal involvement is necessary to establish section 1983 liability").  Moreover, "[s]upervisory officials are not liable in their individual capacities unless they 'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or

knowingly acquiesced in the unconstitutional conduct of the offending officers.'" Id. (quoting Hays v. Jefferson Cnty., 668 F.2d 869, 874 (6th Cir. 1982)).

Here, although haphazardly and often flimsily plead, Cathey has asserted that Davis implicitly authorized or knowingly acquiesced in the alleged constitutional violations, including by "ordering or allowing police officers under her command to continue to discriminatorily weaponize a civil ordinance" in violation of Cathey's constitutional rights.  (ECF No. 1 at PageID 20.)

Defendants additionally argue that "it is A1's not Plaintiff's rights [that] are at issue in the Chancery Court litigation" making it "impossible for the case to have put Director Davis and through her, the City, on notice of any violation of Plaintiff's constitutional rights."  (ECF No. 36 at PageID 247–48.)  Given that the Court is allowing Cathey to amend his complaint to add A1 as a party, that argument also loses any persuasiveness.  Given the foregoing, Defendants' Motion to Dismiss the claims against Davis in her individual capacity is **DENIED**.

C.   Municipal Liability Under § 1983

Plaintiffs allege several § 1983 claims, based on different constitutional provisions. "Section 1983 does not create substantive rights, but instead provides 'a method for vindicating federal rights elsewhere conferred.'"  Schalk v. City of Memphis, Tennessee, No. 14-CV-2220-SHL-tmp, 2015 WL 11019255, at *7 (W.D. Tenn. Aug. 13, 2015) (quoting Albright v. Oliver, 510 U.S. 266, 271 (1994).  To assert a claim under § 1983, a plaintiff must prove he "was deprived of a right 'secured by the Constitution or laws of the United States' and that such deprivation was 'caused by a person acting under color of state law.'"  Littler v. Ohio Ass'n of Pub. Sch. Emps., 88 F.4th 1176, 1180 (6th Cir. 2023) (quoting Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003)).

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). A plaintiff may take "at least four avenues . . . to prove the existence of a municipality's illegal policy or custom." Id. (citing Monell, 436 U.S. at 694). Those include "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." Id. (citing Monell, 436 U.S. at 694.)

Defendants seek dismissal of Cathey's § 1983 claims in toto, based on their repeated assertion that "the bulk of the alleged constitutional violations apply to A1, not Mr. Cathey who lacks standing to bring such claims." (ECF No. 20-1 at PageID 141.) Because Cathey is being granted leave to amend his complaint to add A1 as a party, his § 1983 claims are not subject to dismissal on those grounds. Whether the § 1983 claims are should be dismissed on substantive grounds is addressed below.

1. First Amendment Claims

Defendants argue that Cathey's claims under the First Amendment for violation of his rights to free speech and association are deficient, as they amount to no more than vague and conclusory statements about speech infringements and the Complaint contains no allegations that Cathey or A1's freedom to associate has been interfered with in any way. (ECF No. 20-1 at PageID 141–43.)

Cathey states in his Complaint and Amended Complaint that "he engaged in protected speech by relating their complaints of harassment, discrimination and intimidation to officials of the City of Memphis, elected officials and the Shelby County District attorney to no avail.

13

Plaintiffs' speech touched upon a matter of public concern.  Plaintiffs were mocked and told if you follow City of Memphis policy and lower your price this would all go away." (ECF No. 37-1 at PageID 280.)  The gravamen of Cathey's First Amendment claim appears to be retaliation, as he characterizes the speech above as protected and asserts that it was the motivating factor behind "Defendants continued harassment and discrimination."  (Id.)

To state a claim for a retaliatory infringement of his First Amendment rights, Cathey must show three things: first, that he was engaged in a constitutionally protected activity. Second, that Defendants' adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity.  And, third, that the adverse action was motivated at least in part as a response to the exercise of his constitutional rights.  Johnson v. Hoffner, No. 17-2102, 2018 WL 4488737, at *2 (6th Cir. Apr. 20, 2018) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999)).

Cathey has offered nothing more than conclusory statements contending that he engaged in protected speech, which is fatal to his First Amendment retaliation claim.  For example, there are no allegations describing what the statements were, when they were made, or to whom. These failures make it impossible for Cathey to have sufficiently plead that Defendants took adverse action against him based on that speech, or that any such adverse action was motived by Cathey's exercise of his First Amendment Rights.  The Motion to Dismiss Cathey's First Amendment claims that sound in retaliation is **GRANTED**.

To the extent that Cathey has asserted a claim that his First Amendment right of association has been infringed upon, that claim is similarly infirm.  He asserts that he suffered a "[d]eprivation of his right to freedom of association under the First Amendment" (ECF No. 37-1 at PageID 279), but offers no additional support for that assertion.

14

The First Amendment's freedom to associate protects "choices to enter into and maintain certain intimate human relationships" as well as "associat[ion] for the purpose of engaging in those activities protected by the First Amendment." Saieg v. City of Dearborn, 641 F.3d 727, 741 (6th Cir. 2011) (quoting Roberts v. United States Jaycees, 468 U.S. 609, 617–18 (1984)). Government actions that are not promoting compelling state interests can violate the freedom of association "when, for example, they 'seek to impose penalties or withhold benefits from individuals because of their membership in a disfavored group; attempt to require disclosure of the fact of membership in a group seeking anonymity; or try to interfere with the internal organization or affairs of the group.'" Id. (quoting Roberts, 468 U.S. at 622–23) (cleaned up).

Cathey's Complaint and Amended Complaint are bereft of any allegations related to the disfavored group he is a part of that might give rise to any freedom of association claim. He asserts no facts that could be construed as Defendants' infringing on his rights to enter and maintain intimate relationships or associate for the purpose of engaging in activities protected by the First Amendment. Accordingly, the Motion to Dismiss those claims, that is, all of his remaining First Amendment claims, is **GRANTED**.

2.   Fourteenth Amendment Claims

Defendants also assert that, although Cathey has made claims for violations of his Fourteenth Amendment rights to substantive and procedural due process as well as equal protection, those counts fail to state a claim upon which relief can be granted.

"The Due Process Clause prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law.'" Brown v. Bd. of Educ. of Shelby Cnty. Sch., 47 F. Supp. 3d 665, 678 (W.D. Tenn. 2014) (quoting U.S. Const. amend. XIV, § 1). Due process claims can be either substantive or procedural. Id. "Substantive due process 'prohibits States from infringing fundamental liberty interests, unless the infringement is narrowly tailored to serve a

compelling state interest.'" Id. (quoting Lawrence v. Texas, 539 U.S. 558, 593 (2003)

Meanwhile, "[p]rocedural due process provides a guarantee of fair procedure. Id. at 678–79

(quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990)).  The aim of procedural due process

rules is to "protect persons not from the deprivation, but from the mistaken or unjustified

deprivation of life, liberty, or property." Id. (quoting Carey v. Piphus, 435 U.S. 247, 259

(1978)).

Although Defendants address Cathey's claim for substantive due process, the Court is not

convinced that one exists.  Cathey claims that Defendants deprived him "of his right to the

pursuit of life, liberty and happiness protected under the Fourteenth Amendment."  (ECF No. 37-

1 at PageID 279.)  "Substantive Due Process is not 'a rigid conception, nor does it offer recourse

for every wrongful action taken by the government.'" Guertin v. State, 912 F.3d 907, 918 (6th

Cir. 2019) (quoting EJS Props., LLC v. City of Toledo, 698 F.3d 845, 862 (6th Cir. 2012)).

Making such a claim requires a "'careful description' of the asserted fundamental liberty

interest" at issue. Id. (quoting Washington v. Glucksberg, 521 U.S. 702, 721 (1997)).

Cathey's vague assertion that Defendants have infringed upon his right to the pursuit of

life, liberty and happiness offers an echo of the Declaration of Independence and the Fifth and

Fourteenth amendments, but is not the sort of careful description that sufficiently states a

substantive due process claim or, for that matter, puts Defendants on notice of what rights of

Cathey's or A1's that they infringed upon.  To the extent Cathey asserts a substantive due

process claim, the Motion to Dismiss is **GRANTED**.

Cathey's claim that Defendants infringed upon his procedural due process rights fares no

better.  To state a claim for a procedural due process violation, "a plaintiff must show that (1) he

had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived

of this protected interest; and (3) the state did not afford him adequate procedural rights prior to

depriving him of the property interest." Albrecht v. Treon, 617 F.3d 890, 894 (6th Cir. 2010)

(quoting Women's Med. Prof'l Corp. v. Baird, 438 F.3d 595, 611 (6th Cir. 2006)).

In their Motion, Defendants do not contest that Cathey has asserted a protected interest

under the Due Process Clause, namely, a license to tow and boot.  (ECF No. 20-1 at PageID

143.)  However, they suggest that Cathey has not been deprived of that interest, and explicitly

assert that he has failed to allege that he was not afforded adequate procedural rights.  (Id.)

Cathey does not confront those arguments, and it is not clear how he could.  First, he has

asserted that the City's Permits Officer was "going to pull his license at the next hearing" and

that Defendants "attempt[ed] to pull and revoke Plaintiff's license to tow and boot in the City of

Memphis without due process of law."  (ECF No. 37-1 at PageID 274.)  Cathey also described a

series of hearings conducted by the Memphis Permits Office and the City of Memphis

Transportation Board.  (Id. at PageID 274 –75.)  What Cathey fails to assert, however, is that any

of these proceedings constituted insufficient process or, even more fundamentally, that they

resulted in the deprivation of his property rights.  His failure to do so makes his Procedural Due

Process claim insufficient and the Motion to Dismiss that claim is **GRANTED**.

Finally, Defendants assert that Cathey's claims for equal protection violations under the

Fourteenth Amendment should be dismissed "because he did not allege sufficient facts to show

that the comparator PB&J, was 'similarly situated' to him in all relevant respects."  (ECF No.

20-1 at PageID 144.)

"The Equal Protection Clause of the Fourteenth Amendment 'protects against invidious

discrimination among similarly-situated individuals or implicating fundamental rights.'"  Davis

v. Prison Health Servs., 679 F.3d 433, 438 (6th Cir. 2012) (quoting Scarbrough v. Morgan Cnty.

Bd. of Educ., 470 F.3d 250, 260 (6th Cir. 2006)).  "Sometimes, the enforcement of an otherwise

valid law can be a means of violating constitutional rights by invidious discrimination.  To

address this problem, courts have developed the doctrine of selective enforcement." Rowe v. City of Elyria, 38 F. App'x 277, 281 (6th Cir. 2002) (quoting Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000)).  Making a showing of selective enforcement requires a plaintiff to establish three elements:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations.  Second, [the official] must initiate the prosecution with a discriminatory purpose.  Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

Id. (quoting Gardenhire, 205 F.3d at 319).

Cathey sufficiently alleged each of the elements of a selective enforcement claim.  And, contrary to Defendants' assertion, Cathey alleged that Defendants treated PB&J, a similarly situated white-owned towing company, differently than it treated A1.  Plaintiffs assert that PB&J "had thousands of complaints of improper booting and towing of vehicles," that "PB&J were actually towing people that in fact parked legitimately," and that "[n]one of PB&J['s] employees were arrested or indicted for towing or booting for potential violations of a civil ordinance." (ECF No. 37-1at PageID 278.)  Cathey and A1 assert that they have been "singled out for harsher and discriminatory treatment than other similarly situated nonminority businesses and business owners in the City of Memphis, and other citizens in the State of Tennessee such as PB&J and other booting and towing companies in violation of the Plaintiffs' constitutional rights." (Id. at PageID 279–80.)  Those allegations are sufficient to state an equal protection claim.[8]  This aspect of Defendants' Motion to Dismiss the § 1983 claim is **DENIED**.

---

[8] Defendants assert that Cathey's failure to establish an actionable deprivation of his constitutional rights, as well as his failure to plead a "shared plan" that could have resulted in such a deprivation forestall any claim for conspiracy under §§ 1983 and 1985.  (ECF No. 20-1 at PageID 144.)  Because Cathey has sufficiently plead a deprivation of his constitutional rights

D.     Punitive Damages

Defendants assert that Cathey cannot recover punitive damages under § 1983 or Tennessee law, including the Government Tort Liability Act.  (ECF No. 20-1 at PageID 145.) Cathey does not assert otherwise.

Although it is true that municipalities are "immune from punitive damages under 42 U.S.C. § 1983" City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981), punitive damages are available for claims brought against an official in her individual capacity.  See Joy v. Hardeman Cnty., Tennessee, No. 1:21-cv-01179-STA-jay, 2022 WL 1721057, at *7 (W.D. Tenn. May 27, 2022) ("punitive damages are appropriate in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others'") (quoting King v. Zamiara, 788 F.3d 207, 216 (6th Cir. 2015)).  Accordingly, and because Plaintiff's claims against Davis in her individual capacity survive the Motion to Dismiss, Plaintiff may be entitled to punitive damages.  Defendant's Motion to Dismiss Plaintiff's claim for punitive damages is **GRANTED** as to the City, but **DENIED** as to Director Davis.

E.     State Law Claims

The City asserts that Count VI, a claim for tortious interference with business relationships, should be dismissed because the claim is barred under the Tennessee Governmental Tort Liability Act "unless there are allegations that the City's negligent supervision caused the specific intentional act complained of."  (ECF No. 20-1 at PageID 145 (citing Robinson v. City of Clarksville, 673 S.W. 3d 556, 574 (Tenn. Ct. App. 2023), appeal denied (May 10, 2023)).)  It further argues that, to the extent Cathey and A1 have stated

under the equal protection clause, as well as coordination among Defendants, Defendants' motion to dismiss those claims is **DENIED**.

negligence claims against the City that arise from claims for false imprisonment, false arrest, abuse of process, invasion of the right to privacy, libel, intentional infliction of emotional distress, fraud, and malicious prosecution, such claims are barred by the GTLA.  (Id. (citing Jackson v. Thomas, 2011 WL 1049804, at *5 (Tenn. Ct. App. Mar. 23, 2011).)[9]  Cathey does not respond to these arguments.

To the extent Cathey has asserted such claims against the City, they are barred by the GTLA.[10]  Accordingly, the Motion to Dismiss the claims against the City for false imprisonment, false arrest, abuse of process, invasion of the right to privacy, libel, intentional infliction of emotional distress, fraud, and malicious prosecution, is **GRANTED**.

## CONCLUSION

For the foregoing reasons, Cathey's Motion to Amend and Defendants Motion to Dismiss are both **GRANTED IN PART AND DENIED IN PART**.  The Motion to Dismiss is **GRANTED** as to the official capacity claims against all Defendants.[11]  The Motion to Dismiss is **DENIED** as to the individual capacity claims against Director Davis.  The Motion to Dismiss is **GRANTED** as to all of the First Amendment claims.  The Motion to Dismiss is **GRANTED** as to the claims under Substantive and Procedural Due Process under the Fourteenth Amendment. The Motion to Dismiss is **DENIED** as to the Equal Protection claim under the Fourteenth

---

[9] Defendants also suggest that the Court should not exercise supplemental jurisdiction over the state law claims if it dismisses all of the federal law claims.  (ECF No. 20-1 at PageID 145–46.)  Because all of the federal law claims are not being dismissed, this argument is moot.

[10] Although Defendants assert that Director Davis is immune from suit in her individual capacity, they do not specifically argue that any state-law claims against her should otherwise be dismissed.

[11] The individual Defendants filed a Motion to Dismiss the complaint against them in their individual capacities.  (ECF No. 44.)  Once Cathey and A1 file their amended complaint consistent with this Order, the individual Defendants may renew that motion.  For now, that motion is **DENIED WITHOUT PREJUDICE AS MOOT**.

Amendment.  The Motion to Dismiss the claims for conspiracy under §§ 1983 and 1985 is **DENIED**.  The Motion to Dismiss the claim for punitive damages is **GRANTED** as to the City but **DENIED** as to Director Davis.  The Motion to Dismiss is **GRANTED** as to the state-law claims against the City and **DENIED** as to the state-law claims against Director Davis in her individual capacity.

Cathey and A1 shall file an amended complaint as a separate document on the docket within fourteen days of the entry of this Order that reflects the rulings in this Order.

**IT IS SO ORDERED,** this 30th day of September, 2024.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE